In re Elizabeth M. McCUTCHEN, Debtor.

**WILHITE PURE OIL TRUCK STOP, INC., Plaintiff,**

v.

**Elizabeth M. McCUTCHEN, Defendant.**

Bankruptcy No. 90–10005–B.
Adv. No. 90–0022.

United States Bankruptcy Court,
W.D. Tennessee, E.D.

June 8, 1990.

R. Bradley Sigler, Jackson, Tenn., for plaintiff.

Michael T. Tabor, Jackson, Tenn., for debtor.

Madalyn Scott, Memphis, Tenn., for U.S. Trustee.

## MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON ITS COMPLAINT TO ESTABLISH A LIEN ON RENTS AND ON DEBTOR'S MOTION FOR USE OF CASH COLLATERAL

WILLIAM H. BROWN, Bankruptcy Judge.

This core proceeding [1] is before the Court on the plaintiff's Complaint to Establish a Lien on Rents and For Temporary Injunction [2] and the debtor-defendant's related motion for use of cash collateral. At issue is whether, as a matter of law, the plaintiff's claim to rental income and condemnation proceeds generated by real estate on which it holds a deed of trust is superior to that of the debtor [3]. The following constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7056.

### HISTORY OF CASE AND PROCEEDING

The record reflects that the debtor filed her voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code on January 2, 1990. Listed among her assets is a tract of improved commercial real property located at 2018 North Highland Avenue, Jackson, Tennessee. This real estate serves as a portion of the security for the plaintiff's scheduled claim of $306,000.00 pursuant to a deed of trust executed on January 20, 1987. The deed of trust originally secured Merchants State Bank of Humboldt, Tennessee; however, the deed of trust and underlying note were assigned to the plaintiff.

Located on this real estate is a convenience store which generates rental income of $1,250.00 per month. The rents were assigned in the deed of trust, in accordance with the language quoted subsequently in this opinion.

It is the plaintiff's position, in light of the debtor's default on installment payments due the plaintiff, that pursuant to the assignment language in its deed of trust and its filing in this case of a "Notice of Claim of Lien on Rents," it is entitled to receive all of the rents generated by the property. The debtor disputes this position and asserts in part that without registration of an actual "assignment of rents" separate from the deed of trust, the plaintiff's position with regard to the rents is inferior to hers. In addition, the debtor contends that the plaintiff is adequately protected by the value of the property itself which she estimates at $300,000.00 to $350,000.00, and thus she should be entitled to use the rentals in her efforts to reorganize. Further, the debtor asserts that she will be able to satisfy this plaintiff's claim, along with her other creditors' claims, from the sale of other undeveloped real property; however, no expert proof has been introduced on the value or marketability of either of these properties.

Finally, the debtor relies upon *In re Harbour Town Associates, Ltd.*, 99 B.R. 823

---

1. 28 U.S.C. § 157(b)(2)(K), (M).

2. The temporary injunction is a moot issue as the Court understands that the rents are being escrowed.

3. Subsequent to hearings on these issues, the parties entered into a consensual order, under which the debtor surrendered the condemnation proceeds to the plaintiff to be applied to the note between the parties. This order obviates the necessity for any further consideration of the condemnation issue.

(Bankr.M.D.Tenn.1989) (hereinafter *"Harbour Town"*), a case to be discussed later, as authority for her position that the plaintiff may not claim the rents.

### SUMMARY JUDGMENT

This proceeding is now before the Court on the plaintiff's motion for summary judgment and the debtor's response thereto. In order to grant summary judgment, the Court must find that:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Bankruptcy Rule 7056(c).

As indicated above, the facts presented are undisputed and the issues *sub judice* clearly present questions of law as to who has a priority claim to the rentals. Thus, it may be concluded that this matter may be resolved as a matter of law. Because resolution of these issues involves a determination of the "validity and extent of a real property mortgagee's security interest in the rents and profits of mortgaged property [it] should be [reached] by reference to state law." *In re Heaberg*, unpub., Bk. No. 88–11526–K, Adv. No. 89–0035 (Bankr. W.D.Tenn.1989), p. 5. This conclusion of Chief Judge Kennedy in *Heaberg* is consistent with the former Bankruptcy Act holding in *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) that state laws determined the effectiveness of rent assignments. *See generally*, Eldridge, "Mortgagee's Right To Rents Post–Petition In Lien–Theory States: The Effect Of A Rent Assignment—Wonderland Revisited," NORTON BANKRUPTCY LAW ADVISER (November 1989); *see also In re Village Properties, Ltd.*, 723 F.2d 441 (5th Cir.1984) (*Butner* still applicable under the current Bankruptcy Code). As in *Heaberg*, the applicable controlling state law in the present case is Tennessee law.

Judge Kennedy discussed Tennessee law, as it appeared to exist at the time of the *Heaberg* decision, as well as other Tennessee Bankruptcy Court holdings on this subject. For example, in *Harbour Town*, Chief Judge George C. Paine, II, had a fact scenario similar to the present one. The creditor held a first lien through a deed of trust on apartments. An assignment of rents had been executed. There had been a pre-bankruptcy default; however, the creditor had taken no steps to take possession of the rents. The creditor attempted to utilize § 546(b) of the Bankruptcy Code [4] to file notice of its interest in the rents. Judge Paine held that the bankruptcy filing terminated the creditor's "ability to improve its position in the rents." *Harbour Town* at 825. Further, Judge Paine discussed § 552 of the Code,[5] and concluded that "[n]o exception to the [automatic] stay would authorize [the creditor] to take any action to affect the debtor's rights under § 552 without first securing relief from the

**4.** § 546(b) The rights and powers of a trustee under sections 544, 545 and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

**5.** § 552(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and hearing and based on the equities of the case, orders otherwise.

stay." *Id.* Going further, Judge Paine then concluded that "[r]elief from the stay would not be meaningful because the debtor-in-possession under § 544 avoids [the creditor's] pledge [of rents] completely." *Id.* And, the *Harbour Town* Court concluded that "[t]he exception created by § 546(b) does not apply" because that "exception only applies to those situations in which a creditor's perfection after commencement of the case would, under state law, ordinarily be effective as of a date before the commencement of the case." *Id.* at 826. The basic holding of *Harbour Town* is that the creditor had failed to perfect its rent assignment pre-bankruptcy, and, thus, its interest in the rents was avoidable by the debtor-in-possession. *Id.* at 827.

Contrary to this conclusion and as Judge Kennedy discussed in *Heaberg,* there is prior authority in Tennessee which recognizes the ability of a creditor to "perfect" its prepetition lien on rents by "notice" within the § 546(b) procedure; however, such a "perfection would relate only to those rents accruing *after* " the time of the § 546(b) notice. *Heaberg* at p. 6, citing *In re Sampson,* 57 B.R. 304 (Bankr.E.D.Tenn. 1986); *In re Hill,* 83 B.R. 522 (Bankr.E.D. Tenn.1988). Relying upon these holdings and the "plain and unambiguous language of 11 U.S.C. § 546(b)," Judge Kennedy concluded that "§ 546(b) applies to an assignment of rents wherein perfection is accomplished by the postpetition 'notice' under this [Code] section." *Heaberg* at p. 13.

Similarly, the District Court in *Virginia Beach Federal Savings and Loan Association v. Wood,* 97 B.R. 71 (N.D.Okla.1988) interpreted Oklahoma law to reach a result consistent with *Heaberg.* Obviously, the *Harbour Town* Court disagrees with such a use of § 546(b), as did the court in *In re Multi–Group III Limited Partnership,* 99 B.R. 5 (Bankr.D.Ariz.1989) in its interpretation of Arizona law.

As to the effect of § 552(b), it has been observed that "Justice Scalia said in dictum [in his opinion for the Court in *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484

U.S. 365, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988) ] that a security interest in rents and profits from collateral survives Bankruptcy Code § 552(b) only if that interest is perfected at the time of the filing of the bankruptcy petition." Williams, "Section 552— Postpetition Effect of Security Interest," 1989 ANNUAL SURVEY BANKRUPTCY LAW (one star), p. 457. At least one bankruptcy court has relied on Justice Scalia's dictum in cutting off an unperfected interest in rents as of the filing date of the bankruptcy. *Id.* at 462 citing *In re Erickson,* 83 B.R. 701, 704 (Bankr.D.Neb.1988).

Fortunately, in Tennessee the state legislature has acted to clarify the effect of a recorded assignment of rents by a statutory amendment published in September, 1989. See Tennessee Code Annotated § 66–26–116. Because the effective date of this legislation is April 27, 1989, the *Harbour Town* and *Heaberg* Courts were apparently unaffected by this new legislation since those cases were filed before April 27, 1989. *In re BVT Chestnut Hill Apts., Ltd.,* 115 B.R. 116 (Bankr.M.D.Tenn. 1990). However, as will be discussed, this Court concludes that the Tennessee legislature has effectively eliminated § 546(b) as a necessary consideration in most rent assignment situations, but that relief from the automatic stay, cash collateral usage, and § 552(b) remain as possible concerns for the parties and the courts. Given this conclusion, the issue becomes whether the new Tennessee legislation is applicable to the instant proceeding, for in order to be applicable, it must be applied retroactively.

THE PRESENT CASE UNDER TENNESSEE CODE ANNOTATED § 66–26–116

It is uncontroverted that this deed of trust was duly registered in the appropriate county and that it contains the following provision:

I [mortgagor] covenant and agree ... (7) that there are hereby specifically assigned to the holder all rents, royalties, revenues, damages, and payments of every kind at any time accruing under or becoming payable on account of the sale or lease of any interest in any portion of

said premises and on account of any and all oil, gas, mining and mineral leases, rights or privileges of any kind now existing or that may hereafter come into existence covering the said premises or on account of any condemnation procedures or other seizure of all or part hereof under the right of eminent domain or otherwise, and the holder, at his option, may collect and receive the same as the same become due and payable, and all moneys received by the holder by reason of this assignment may be applied at the option of the holder upon any unpaid amounts or principal and/or interest, whether or not the same shall be due and payable, provided that nothing herein shall be construed as a waiver of the priority of the lien of this conveyance over any such lease, rights, or privileges granted subsequent to the date of this conveyance.

It is equally uncontroverted that the deed of trust was recorded on January 20, 1987. The debtor-in-possession filed her Chapter 11 petition, enabling her to assume the status of a hypothetical lien creditor, on January 2, 1990. 11 U.S.C. § 1107(a); § 544(a). In the interim, the Tennessee legislature enacted the following provision to be effective on April 27, 1989:

[Tennessee Code Annotated] § 66–26–116.

**Instruments granting, transferring, pledging or assigning lessor's interests in real property.**—(a) *Upon registration,* in the county where the real property lies, *of any instrument* granting, transferring, pledging or assigning the lessor's interest in leases or rents arising from real property, *the interest of the* grantee, transferee, pledgee, or *assignee shall be fully perfected* as to the grantor, transferor, pledgor, or assignor and all third parties *without the necessity* of furnishing notice to the assignor or lessee, obtaining possession of the real property, impounding the rents, securing the appointment of a receiver, or *taking any other affirmative action* and shall have the priority provided for in this chapter. [*See*, T.C.A. §§ 66–26–105]

(b) The lessee is authorized to pay the assignor until the lessee receives notification that rents due or to become due have been assigned and that payment is to be made to the assignee. A notification that does not reasonably identify the rents is ineffective. If requested by the lessee, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the lessee may pay the assignor.

(c) Any registered instrument granting, transferring, pledging or assigning an interest in leases or rents arising from real property, shall upon satisfaction, be released as provided in Chapter 25, part 1 of this title and shall be subject to the penalties provided therein.

Emphasis added.

For purposes of this Chapter of the Tennessee Code, priority is generally afforded those whose security interests are recorded first in time. Tennessee Code Annotated § 66–26–105.

As discussed above, the plaintiff's deed of trust, which provides for assignment of the rents, was recorded on January 20, 1987, over two years prior to the enactment of the above quoted statute, which gives unequivocal effect to the assignment language in the deed of trust. Thus, some question exists as to whether this Tennessee Code provision acts to protect this pre-April 27, 1989, recordation. As noted by Judge Richard S. Stair, Jr., registration of the trust deed "gave notice to all the world," *In re Fairfield Group Partnership*, 69 B.R. 318, 320 (Bankr.E.D.Tenn. 1987). This conclusion is supported by the language of Tennessee Code Annotated § 66–26–102 that:

all of said instruments so registered shall be notice to all the world from the time they are noted for registration, as prescribed in § 8–13–108; and shall take effect from said time.

In the present case, there is no evidence of any party or interest intervening between the time of recording (January 20, 1987) and the effective date of Tennessee Code Annotated § 66–26–116 (April 27, 1989). In the absence of evidence that

another party or interest would be adversely affected or that a party had gained priority between the time of recordation of any assignment of rents and April 27, 1989, this Court applies a logical reading to § 66–26–102 in combination with § 66–26–116 and concludes that § 66–26–116 is applicable to assignments of rent recorded prior to its effective date of April 27, 1989. To hold otherwise could merely lead to the re-recording of all pre-April 27, 1989 rent assignments, a task which appears to satisfy only formalities. By its terms, § 66–26–116 is remedial or procedural in nature in that it provides for the "mode or proceeding by which a legal right is enforced." *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn.1976). Moreover, allowing the retroactive application of § 66–26–116 does not offend constitutional protections of vested rights or contractual obligations, because, as between the assignor and assignee those rights and obligations were fixed as of the date of recording. Tennessee Code Annotated § 66–26–102; *see also Saylors v. Riggsbee; In re BVT Chestnut Hill Apts. Ltd.* It is only the intervention of other parties or interests or the event of bankruptcy which might interject concerns over the retroactive effect.

As to the bankruptcy filing, the role of the debtor-in-possession did not come into existence until after the effective date of § 66–26–116. Thus, retroactive application of § 66–26–116 does not alter the substantive rights of the rent assignor and assignee. *See, Hays v. Hays*, 709 S.W.2d 625, 627 (Tenn.App.1986); *In re BVT Chestnut Hill Apts. Ltd.* In summary, in this case, there are no interests which would be adversely affected by a retroactive application of § 66–26–116. Consequently, given that § 66–26–116 was in effect prior to the filing of this debtor's Chapter 11 petition, it may be concluded that the plaintiff's lien on the rents was perfected pre-bankruptcy and has priority over the debtor's interest.

As in *In re Pavilion Place Associates*, 89 B.R. 36 (Bankr.D.Minn.1988), this plaintiff/creditor, under applicable state law, obtained a security interest in future rents through the deed of trust as "the assigning document," and that security interest was perfected by appropriate recording. *Id.* at 39. The Court no longer must concern itself with § 546(b) since no further action is necessary to perfect the security interest under present Tennessee statutory authority. However, there remains a question of whether the creditor is entitled to possession of the future rents. This Court agrees with the *Pavilion Place Associates* Court that

> [a]n enforceable interest regarding an assignment of rents arises in favor of the assignee upon the creation of the security interest. The right to actual enforcement, however, is subject to the occurrence of statutory and contractual conditions precedent. While the conditions precedent might not have occurred as of filing regarding the Pavilion rents, that does not change the fact that the post-petition rents are subject to the Fund's security interest and become its cash collateral under 11 U.S.C. § 363. It is true that the automatic stay prevents the Fund from undertaking steps to enforce its rights in the cash collateral. However, it is equally true that the Debtor is prohibited from using the same cash collateral without first obtaining an order allowing the use pursuant to 11 U.S.C. § 363.

89 B.R. at 39; *see also In re Metro Square*, 106 B.R. 584 (D.Minn.1989) (agreeing with *Pavilion Place Associates* and concluding that under the applicable state recording statute, the secured creditor's interest was "not avoidable under 11 U.S.C. § 544"); *see generally* McCafferty, "The Assignment Of Rents In The Crucible Of Bankruptcy," 94 COM.L.J. (Winter 1989) 433, 471–480.

Tennessee Code Annotated § 66–26–116(b) makes it clear that the perfected secured creditor is not entitled to possession of the rents until a proper notice is received by the lessee, directing the lessee to pay the assignee. There is no proof that this creditor has given such notice to the lessee, and of course the automatic stay would act to enjoin such a notice since it would be an act to enforce a lien or to obtain possession of property of the estate. *See*, 11 U.S.C. § 362(a)(3), (4), and (5). In this case, the creditor, following *Heaberg*, filed a "Notice of Claim of Lien on Rents

In Lieu of Seizure of Property or Commencement of Action." Under this Court's interpretation of Tennessee Code Annotated § 66–26–116, such a § 546(b) notice is no longer required and does not comply with § 66–26–116(b).

At the same time, however, the Court cannot find from the proof offered, that the debtor has offered adequate protection for her proposed use of the cash collateral (future rents). See 11 U.S.C. § 361 and § 363. The only proof is the debtor's estimate of the value of the real estate and her budget. The Court does not doubt that the debtor "needs" these rents to meet her budget; however, mere need does not satisfy the requirements of §§ 361 and 363. Therefore, the Court denies the debtor's present motion to use cash collateral, without prejudice to the debtor's refiling a motion if it can be supported by adequate protection proof.

Further, because of the debtor's failure to provide adequate protection for use of the rents, the Court finds cause to grant the secured creditor relief from the automatic stay under § 362(d)(1) to permit the creditor to give its notice to the lessee pursuant to Tennessee Code Annotated § 66–26–116(b). From the date of receipt of that notice, if it complies with § 66–26–116(b), the lessee shall pay future rents to the creditor to be applied to the secured debt.

There are some rents which have been escrowed pending the Court's ruling, and further cash collateral/adequate protection hearings may be necessary for a determination of the disposition of these escrowed rents, if the parties are unable to agree on the use or disposition of these escrowed funds.

Application of the Court's prior conclusions of law to the proof and record leads the Court also to conclude that under 11 U.S.C. § 552(b) this creditor's perfected security interest in rents extends to rents "acquired after the commencement of the case." 11 U.S.C. § 552(b). This is true because the parties' contractual agreement and applicable Tennessee law rendered the security interest perfected prepetition. It is only possession of those postpetition rents which must await bankruptcy court approval. In this case, the Court has found cause to permit the creditor to give its required state notice and to take possession of future rents thereafter.

FROM THE ABOVE FINDINGS AND CONCLUSIONS, IT IS HEREBY ORDERED THAT:

1. The plaintiff's Motion for Summary Judgment on the Complaint to Establish a Lien on Rents is GRANTED, and for the reasons set forth above, the plaintiff is entitled to give its required state law notice to the lessee and to take possession of future rents thereafter.

2. The defendant's Motion for Use of Cash Collateral is DENIED, without prejudice to its being refiled.

3. The determination of who, as between the plaintiff and the debtor, is entitled to receive the escrowed rents is RESERVED pending resolution of that issue after a further hearing in this Court, if the parties are unable to agree on a disposition of the escrowed rents.

SO ORDERED.