**In re CREEKSTONE APARTMENTS ASSOCIATES, L.P., a Missouri Limited Partnership, Debtor.**

**CREEKSTONE APARTMENTS ASSOCIATES, L.P., a Missouri Limited Partnership, Plaintiff,**

v.

**RESOLUTION TRUST CORPORATION, as Receiver for Home Federal Savings Association of Kansas City and First Tennessee Bank National Association, Trustee, Defendants.**

**Bankruptcy No. 392–04511.
Adv. No. 93–0052A.**

United States Bankruptcy Court,
M.D. Tennessee.

Dec. 27, 1993.

G. Rhea Bucy, Thomas H. Forrester, Edward T. Brading, Gullett, Sanford, Robinson & Martin, Nashville, TN, for Creekstone Apartments Associates, L.P.

William R. O'Bryan, Jr., Trabue, Sturdivant & DeWitt, Nashville, TN, for TE–Two Real Estate Ltd. Partnership.

Marc T. McNamee, Neal & Harwell, Nashville, TN, for Michelson Asset Management, Inc.

## MEMORANDUM REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT AND DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGEMENT

GEORGE C. PAINE, II, Chief Judge.

### I. INTRODUCTION

Creekstone Apartments Associates, L.P., as plaintiff initiated this adversary proceeding to determine the validity, priority and extent of liens held by the Resolution Trust Corporation ("RTC") and First Tennessee Bank National Association on pre-petition rents collected and held on deposit by Creekstone. Before the court is the plaintiff's motion for summary judgement and a cross motion for partial summary judgement filed by TE–Two Real Estate Limited Partnership, the successor in interest to the RTC, a defendant. For the reasons stated in this memorandum, the plaintiff's motion for summary judgement is denied in part and granted in part, and the defendant's cross motion for partial summary judgement is granted. The following constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### II. JURISDICTION

The court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (K), and (O).

### III. FINDINGS OF FACT

Creekstone, a Missouri Limited Partnership, owns an apartment complex in Nash-

ville, Tennessee, known as Creekstone Apartments. In 1987, Creekstone borrowed $11 million from the Industrial Development Board of the Metropolitan Government of Nashville and Davidson County, Tennessee ("Board"). Creekstone's obligation to the Board was secured by a Deed of Trust and Security Agreement ("First Deed of Trust") encumbering Creekstone Apartments dated December 1, 1987, and recorded on December 23, 1987 in the Register's Office for Davidson County, Tennessee.

The Board raised the money it lent to Creekstone by selling industrial development bonds in the amount of $11 million. First Tennessee served as bond trustee pursuant to a Trust Indenture dated December 1, 1987 between First Tennessee and the Board. Pursuant to the terms of the Trust Indenture, the Board assigned its interest (except as specified in the Trust Indenture) in the note and First Deed of Trust to First Tennessee.

To further secure payment of the $11 million promissory note, First Tennessee received a letter of credit for $11,167,260 from Home Savings Association of Kansas City. To secure the letter of credit, Home Savings pledged certain government securities to First Tennessee.

To reimburse Home Savings for any draws First Tennessee made on the letter of credit or for any collateral First Tennessee liquidated pursuant to the terms of the collateral pledge agreement between First Tennessee and Home Savings, Creekstone entered into a Reimbursement Agreement with Home Savings. Creekstone's obligations to Home Savings under the Reimbursement Agreement were evidenced by a promissory note dated December 1, 1987 in the principal amount of $11,167,260. The $11,167,260 note is secured by a Second Deed of Trust and Security Agreement ("Second Deed of Trust") encumbering Creekstone Apartments dated December 1, 1987 and recorded on December 23, 1987 in the Register's Office for Davidson County, Tennessee. As of the petition date, the total amount Creekstone owed under the $11,167,292 note and Reimbursement Agreement was approximately $2,196,292.

Among other things, the First and Second Deeds of Trust encumbering Creekstone Apartments granted to First Tennessee and Home Savings, respectively, a security interest in rents as follows ("the Assignment of Rents Clause"):

That the Grantor [Creekstone] ... does hereby GRANT, BARGAIN, SELL, ASSIGN AND CONFIRM unto the Mortgage Trustee, and unto his successors and assigns, forever all of the Grantor's estate, right, title and interest in, to and under and grants a security interest in any and all of the following property....

. . . .

(c) All rents, income, profits, [and] revenues ... under any and all leases or tenancies now existing or hereafter created in all or any portions of the Premises or any part thereof ... with the right to receive and apply the same to said indebtedness, and Mortgage Trustee may demand, sue for and recover such payments but shall not be required to do so;

. . . .

(i) All proceeds (including claims or demands thereto) of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims....

The RTC was appointed conservator for Home Savings on March 15, 1991. On that same day, Home Federal Savings Association of Kansas City was chartered as a new federal mutual association. Home Federal purchased the assets of Home Savings. On March 27, 1992, the RTC was appointed receiver for Home Federal.

On May 8, 1992, following the debtor's failure to make debt service payments, the RTC opted to exercise its rights under the Second Deed of Trust. The RTC filed suit in the United States District Court for the Middle District of Tennessee for the appointment of a receiver and for the declaration of a conservative trust. Before a receiver could be appointed or any rent sequestered, the debtor filed a bankruptcy petition in this court on May 20, 1992. The debtor currently operates the Creekstone Apartments as debtor-in-possession.

On October 15, 1992, the debtor and the RTC entered into an Agreed Order Regarding the Use of Cash Collateral. This order required the debtor to segregate "[a]ll monies derived from rents collected pre-petition" into a separate, interest-bearing account known as the "Prepetition Cash Collateral Account." Pursuant to such order, monies totalling $742,553.71 were deposited and are being held by the debtor in an investment account at Boatman's Bank, account number 01050021073695. The parties have assumed for the purposes of this proceeding that these funds are pre-petition rents collected by the debtor.

On January 27, 1993, the RTC filed suit in the United States District Court for the Middle District of Tennessee against Creekstone's general partner and counsel for the conversion of secured funds. In March of 1992, prior to filing bankruptcy, the debtor made two payments totalling $72,346.28 to its general partner, Michelson Asset Management, Inc., for unpaid management fees and for interest owed on an unsecured loan made by Michelson to the debtor. Upon filing bankruptcy on May 20, 1992, the debtor paid $30,600 to its counsel Gullett, Sanford, Robinson & Martin ("GSR & M"). The RTC alleged in its complaint that such payments amounted to the conversion of collateral in which the RTC held a perfected security interest.

On January 28, 1993, the debtor filed a complaint commencing this action to determine the validity, priority and extent of the RTC's security interest in pre-petition rents collected and deposited by the debtor. Upon motion by the debtor, Michelson, and GSR & M, the conversion action was referred to this court, and on March 23, 1993 was consolidated with this adversary proceeding.

On June 4, 1993, Creekstone moved for summary judgement on all issues raised in its January 28th complaint. Subsequently, TE–Two, as successor in interest to the defendant, the RTC, filed a cross motion for partial summary judgement.

## IV. CONCLUSIONS OF LAW

### A. Summary Judgement Standard

Bankruptcy Rule 7056 states that Federal Rule of Civil Procedure 56, governing summary judgements, applies in adversary proceedings. Rule 56 provides:

> The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c) (West 1993).

Rule 56(c) sets forth a two-pronged test. The first question is whether there is a genuine dispute regarding a fact that is material to the case. The second question is, if there is no factual dispute, whether the moving party is entitled to a judgement under the law.

The court finds no dispute regarding the material facts of this case as set forth above. Further, the court finds that judgement under the law is appropriate as to the legal issues raised in the plaintiff's motion and the defendant's cross motion for summary judgement. The court identifies two issues for resolution in summary judgement:

(1) Whether, under Tennessee law, the RTC held a valid and perfected security interest in pre-petition rents collected and deposited by the debtor[1] (the "rents issue").

(2) Whether the payments made to the debtor's general partner and counsel constituted a conversion of funds in which the RTC held a perfected security interest (the "conversion issue").

### B. Discussion of the Rents Issue

■ It is clear that the Assignment of Rents Clause in the RTC's deed of trust granted the RTC a security interest in rents collected on the mortgaged property. In resolving the rents issue, the court must determine first whether this security interest was validly perfected and second whether it

---

1. The parties have assumed for the purposes of this proceeding that the pre-petition rents collected by the debtor are currently held in the Prepetition Cash Collateral Account pursuant to agreed order. This is, therefore, not a case involving commingling or tracing questions.

extended to pre-petition rents collected and deposited by the debtor.

It is well settled that state law controls the determination of the validity and extent of a mortgage holder's security interest in rents collected from mortgaged property. *E.g., In re McCutchen,* 115 B.R. 126, 129 (Bankr. W.D.Tenn.1990) (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)). Consequently, in order to assess the validity and extent of the RTC's interest in rents, this court must refer to the relevant provisions of Tennessee law.

■ Prior to April 27, 1989, to properly perfect a security interest in an assignment of rents under Tennessee law, the creditor had to take possession of the property or sequester the rents. *In re BVT Chestnut Hill Apartments, Ltd.,* 115 B.R. 116, 117 (Bankr.M.D.Tenn.1990) (J. Lundin) (citing *TSC Industries, Inc. v. Tomlin,* No. 84–1122–III (Ch. Ct. Davidson County, Tenn., Feb. 6, 1987)). In 1989, however, the Tennessee General Assembly enacted what is now codified as Tenn.Code Ann. § 66–26–116, effective April 27, 1989, which provides:

(a) *Upon registration, in the county where the real property lies, of any instrument* granting, transferring, pledging or *assigning the lessor's interest in* leases or *rents* arising from real property, *the interest* of the grantee, transferee, pledgee or assignee *shall be fully perfected* as to the grantor, transferor, pledgor or assignor and all third parties without the necessity of furnishing notice to the assignor or lessee, obtaining possession of the real property, impounding the rents, securing the appointment of a receiver, or taking any other affirmative action, and shall have the priority provided for in this court.

(b) The lessee is authorized to pay the assignor until the lessee receives notification that rents due or become due have

been assigned and that payment is to be made to the assignee. (emphasis added). *BVT Chestnut,* 115 B.R. at 118.

■ § 66–26–116 conclusively established when a security interest in rents was perfected in Tennessee. *BVT Chestnut,* 115 B.R. at 119. The creditor need only record its assignment of rents in the real property records where the deed of trust is recorded to immediately perfect a security interest in rents. *Id.* Possession of the property or sequestration of rents through a receiver is no longer necessary. *Id.* Consequently, the debtor's argument that some additional step, such as possession or sequestration, was necessary to perfect the RTC's interest is contrary to § 66–26–116 and Judge Lundin's holding in *BVT Chestnut. See id. See also In re SLC Ltd. V,* 152 B.R. 755, 760–61 (Bankr.D.Utah 1993) (Utah's statute for perfection of rents similar to § 66–26–116).

Moreover, the debtor has confused the separate and distinct legal issues of perfection and enforcement of security interests. " '[P]erfection' refers to the process by which a secured party puts third-parties on notice of its interest, whereas 'enforcement' refers to the steps the secured party must take to realize its rights in the collateral, which in this case is the rental income." *In re Mount Pleasant Ltd. Partnership,* 144 B.R. 727, 733 (Bankr.W.D.Mich.1992) (citing *In re Vienna Park Properties,* 136 B.R. 43, 54 (S.D.N.Y. 1992)). *See also SLC Ltd.,* 152 B.R. at 762.

■ As clearly provided in § 66–26–116(a), the assignment of rents becomes perfected upon its recording with the county's register's office "without the necessity of . . . obtaining possession of the real property, [or] impounding the rents." [2] The additional steps of possession or sequestration, called for by the debtor, are therefore not related to perfection, but to enforcement of the RTC's assignment.[3] *See id.*

Accordingly, the RTC perfected its security interest in rents upon recording its deed

---

**2.** In addition, § 66–26–116(b) distinctly provides for enforcement of a security interest in rents by notifying the tenants that rent payments are to be made to the mortgage holder.

**3.** The RTC's failure to take possession of the property or appoint a receiver to sequester rents prior to the petition date stays the enforcement of the RTC's security interest pursuant to 11 U.S.C. § 362(a).

of trust in the Davidson County Register's Office on December 23, 1987. This interest remained perfected at the time of the debtor's bankruptcy filing on May 20, 1992.

■ The debtor further argued that applying § 66–26–116 would violate the Contracts Clause of the United States and Tennessee Constitutions. The assignment of rents was a contract executed in 1987, prior to the enactment of § 66–26–116. According to the debtor, applying § 66–26–116 to this contract would retroactively impair the contract rights that vested between the parties when it was signed. As such, the RTC is subject to Tennessee's perfection requirements prior to § 66–26–116, i.e., possession or sequestration.

The court, however, finds this reasoning contrary to Judge Lundin's holding in *BVT Chestnut.* This case involved similar facts: the debtor's principal asset was an apartment complex, the mortgage holder recorded an assignment of rents in 1986, the Tennessee legislature enacted § 66–26–116 in 1989, and the debtor filed Chapter 11 in 1990. *Id.* at 116–17. Even though the assignment of rents contract was executed prior to the enactment of § 66–26–116, the court held that the mortgage holder was perfected on the petition date. As Judge Lundin stated, "Applying Tenn.Code Ann. § 66–26–116 in this case does not impair any vested rights in the rent....; § 66–26–116 merely changed the procedure for perfection..... Application of § 66–26–116 to this debtor's 1986 'Assignment of Leases' is not a prohibited 'retroactive' application." *Id.* at 118. *See also McCutchen,* 115 B.R. at 130–133.

The debtor cites this court's decision by Judge Paine in *In re Harbour Town Associates, Ltd.,* 99 B.R. 823 (Bankr.M.D.Tenn. 1989), as inconsistent with this view. However, as Judge Lundin points out in *BVT Chestnut, Harbour Town* is "factually different in one critical respect." *BVT Chestnut,* 115 B.R. at 119. The Chapter 11 case in *Harbour Town* was filed three months before the effective date of § 66–26–116. *Id.* Conse-

quently, on the petition date, the mortgage holder was subject to Tennessee's prior perfection requirements. *Id.*

■ It thus remains conclusive that the RTC possessed a valid, perfected security interest in rents as of the petition date. The court must now consider whether this interest extended to the pre-petition rents collected and deposited by the debtor.[4]

The debtor contended that it did not. Because the pre-petition rents collected by the debtor were deposited into a bank account, the debtor concluded that such monies were no longer rents secured under the Assignment of Rents Clause. Instead, they were an account, in which an interest is perfected by pledge and possession.

When recently faced with the same argument in a factually similar case, the Bankruptcy Panel of the Ninth Circuit in *In re Scottsdale Medical Pavilion,* 159 B.R. 295, 298 (9th Cir. BAP 1993), stated:

> The debtor contends that because the funds at issue are held in a bank account, they no longer constitute "rents" covered by the assignment, but are more properly characterized as an account. That argument is unpersuasive. All "rents" are converted into a different form upon payment. For example, a rent payment represented by a check becomes an "instrument," but is nonetheless covered by a security interest in the rent. If the debtor's argument were accepted, then all assignments of rents would be illusory, as the funds would no longer be rents once paid. We therefore conclude that because all the funds in the account are directly attributable to rents they are rents within the scope of the assignment of rents provisions.

This court adopts the analysis of the *Scottsdale* court and holds that the pre-petition rents collected and deposited by the debtor were rents within the scope of the Assignment of Rents Clause. Moreover, the Assignment of Rents Clause itself granted a security interest in "[a]ll proceeds ... of the

---

4. Whether the RTC's interest extended to post-petition rents under 11 U.S.C. § 363(a) and § 552(b) is not an issue raised in this adversary proceeding. The parties have entered into an Agreed Order Regarding the Use of Cash Collateral permitting the debtor to use post-petition rents in its operations.

conversion ... of any [rents, income, or revenues from the property] into cash or liquidated claims." The RTC thus held a valid security interest in pre-petition rents even though such rents were converted into deposit accounts.

When the RTC recorded its deed of trust containing the Assignment of Rents Clause on December 23, 1987, the RTC perfected its security interest in the debtor's pre-petition rents. This interest remained perfected as of the petition date. As a result, the RTC's security interest is superior to the debtor's avoidance powers under 11 U.S.C. § 544.

For the foregoing reasons, the court concludes that the plaintiff's motion for summary judgement with respect to the rents issue is denied. Accordingly, the defendant's cross motion for partial summary judgement is granted.

C. Discussion of the Conversion Issue

As to the conversion issue, the court finds that the debtor's payments to their general partner and counsel were not a conversion of the RTC's collateral. To maintain an action for conversion, the RTC must show that they had an immediate right of possession of the property in question at the time of the alleged conversion. *Mammoth Cave Production Credit Assoc. v. Oldham*, 569 S.W.2d 833, 836–37 (Tenn.Ct.App.1977).

At no time did the RTC have an immediate right of possession of collected rents held on deposit by the debtor. The basis for this conclusion lies again in the distinction between perfection and enforcement of a security interest. While the RTC possessed a perfected security interest in rents, it did not take the necessary steps to enforce its security interest at the time the payments at issue were made. The deed of trust provided the mechanism through which the RTC enforced its interest in rents. Section 22(b) states:

> (b) Upon and after any such Event of Default, the Beneficiary [RTC] ... may enter into and upon all or any part of the Premises, ... and may exclude the Grantor [Creekstone], ... wholly therefrom; and ... may use, operate, manage and control the Premises, and conduct the business thereof, either personally or by their ... receivers; ... and the Beneficiary shall be entitled to collect and receive all earnings, revenues, rents, issues, profits and income of the Premises and every part thereof, *all of such shall for all purposes constitute property of the Grantor.* (emphasis added).

This provision says that until the RTC enforces its security interest by entering the premises or by appointing a receiver for the collection of rents, all rents collected shall constitute property of the debtor. The debtor thus maintains the right to pay out such rent deposits in the operation of the property until the RTC takes the required enforcement steps to dispossess the debtor of its rents. The parties are in agreement that the RTC took no such enforcement steps prior to the debtor's bankruptcy. Thus, by definition, the debtor did not convert the RTC's collateral. As counsel for Michelson put it, "The debtor cannot convert its own property." The plaintiff's motion for summary judgement regarding the conversion issue, therefore, is granted.

IT IS SO ORDERED.