In re **MICHIGAN BEACH APARTMENTS, an Illinois Limited Partnership, Debtor.**

**Bankruptcy No. 85 B 6614.**

United States Bankruptcy Court, N.D. Illinois, E.D.

May 21, 1986.

Howard L. Adelman of Adelman & Gettleman, Ltd., Chicago, Ill., for debtor.

William T. Clabault, Asst. U.S. Atty., Chicago, Ill., for U.S.

*Memorandum and Order*

JOHN D. SCHWARTZ, Bankruptcy Judge.

This cause is before the Court on the motion of the debtor, Michigan Beach Apartments, an Illinois Limited Partnership ("debtor"), for authority to pay its attorneys a retainer fee pursuant to § 328 of the Bankruptcy Code. (11 U.S.C. § 328). The Department of Housing and Urban Development ("HUD"), the only secured creditor, objects.

The debtor is the beneficial owner and operator of residential real estate. The improvements were constructed with the use of funds guaranteed by HUD. HUD objects to the proposed use of rental income ("Project Funds") claiming that to do so would violate the terms of the Regulatory Agreement by which HUD agreed to guaranty the debtor's mortgage loan. The debtor's motion to use Project Funds to pay for its legal representation in these bankruptcy proceedings will be denied.

The debtor is an Illinois limited partnership whose sole asset is a 240 unit apartment building known as Michigan Beach Apartments ("Project"). David Pattis is the sole general partner. The fee interest in the Project is owned by a land trust with the American National Bank and Trust Company of Chicago known as Trust No. 20417.

On November 16, 1967, American National Bank, not personally, but as land trustee, executed and delivered a non-recourse note ("Note") secured by a mortgage ("Mortgage") to Draper and Kramer, Incorporated. The principal amount of the Note is $3,728,700 and the Note bears an annual interest rate of 6%. Since the Note was to be guaranteed by HUD, a Regulatory Agreement was executed by the debtor, the American National Bank, as land trustee and legal owner, and the Federal Housing Administration ("FHA") as authorized by Section § 221(d)(4) of the National Housing Act, 12 U.S.C. § 1715*l* (d)(4). The Regulatory Agreement was expressly incorporated into the Mortgage (Mortgage, Paragraph 3) and was recorded following the Mortgage on November 21, 1967.

The Regulatory Agreement empowered the FHA to regulate the use of Project Funds by the debtor. Among the Regulatory Agreement's provisions are the following:

6. Owners shall not without the prior written approval of the Commissioner:

a.) Convey, transfer, or encumber any of the Mortgaged property ...

b.) Assign, transfer, dispose of, or encumber any personal property of the project, *including rents* ... (emphasis added).

\* \* \* \* \* \*

e.) Make, or receive and retain, any distribution of assets or any income of any kind of the project except "surplus cash" ...

\* \* \* \* \* \*

(2) No distribution shall be made from borrowed funds ... when there is any default under this Agreement or under the Note or Mortgage.

\* \* \* \* \* \*

10. Upon a violation of any of the above provisions of this Agreement by Owners, the Commissioner may ... declare a default ... and upon such default the Commissioner may:

\* \* \* \* \* \*

b.) Collect all rents and charges ... and use such collections to pay the mortgagor's obligations under this Agreement and under the note and mortgage and the necessary expenses of preserving the property and operating the project;

\* \* \* \* \* \*

13. As used in this Agreement the term:

\* \* \* \* \* \*

g.) "Surplus Cash" means any cash remaining after:

(1) the payment of:

(i) All sums due or currently required to be paid under the terms of any mortgage or note insured or held by the Federal Housing Commissioner;

\* \* \* \* \* \*

h.) "Distribution" means any withdrawal or taking of cash or other assets of the project other than for mortgage payments or for payment of reasonable expenses incident to its construction, operation, and maintenance[.]

17. The following Owners: David Pattis general partner and all limited partners of MICHIGAN BEACH APARTMENTS, a limited partnership do not assume personal liability for payments due under the note and mortgage, or for the payments to the reserve for replacements, or for matters not under their control, provided that said Owners shall remain liable under this Agreement only with respect to the matters hereinafter stated; namely

(a) for funds or property of the project coming into their hands which, by the provisions hereof, they are not entitled to retain: and

(b) for their own acts and deeds or acts and deeds of others which they have authorized in violation of the provisions hereof.

On November 1, 1971, the debtor defaulted on its installment payment under the Note. Draper and Kramer, the mortgagee, assigned the Note and Mortgage to the Secretary of Housing and Urban Development ("HUD") on March 14, 1972, in return for its claim for loss of $3,650,819.70 with interest thereon from October 1, 1971. The assignment was recorded on March 20, 1972. The debtor has made payments on the Note to HUD but since that time the Note has remained in default.

On April 16, 1984, HUD commenced a foreclosure action in the United States District Court for the Northern District of Illinois. HUD filed a motion in the District Court for an order requiring the debtor to turn over Project Funds to HUD as required by Section 10(b) of the Regulatory Agreement. On May 24, 1985, while the motion was pending in District Court, the debtor filed for bankruptcy relief pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* On that same date, the Bankruptcy Court issued a cash collateral order allowing the debtor to continue to collect rents and use rental income solely for the maintenance of the Project with any excess to be applied to arrearages on the Note.

The bankruptcy schedules list HUD as the only secured creditor, holding the Note with an unpaid principal balance of $3,650,-000. The schedules list two law firms as the debtor's only unsecured creditors to which a total indebtedness of $2,000 is owed.

The Regulatory Agreement places explicit restrictions on the debtor's use of Project Funds. When the Mortgage is in default, Project funds may be used solely for Mortgage payments and reasonable expenses incident to the construction, operation, and maintenance of the Project. (Regulatory Agreement, Section 10.) According to the terms of the non-recourse Note and the exculpation clause of Paragraph 17 of the Regulatory Agreement, the debtor's general partner is shielded from personal liability on the Note so long as the debtor complies with the Regulatory Agreement's restrictions on the use of Project Funds. (*See, supra* at 448, *see also,* Mortgage Note, Exhibit A to HUD's Memorandum in Opposition to the Use of Project funds.)

In bankruptcy cases similar to the case at bar, courts have held that project funds cannot be used to pay legal fees incurred in the debtor's defense against foreclosure proceedings on a HUD-insured housing project. *In the Matter of EES Lambert,* 63 B.R. 174 (N.D.Il1986), *In re Hil'Crest Apartments,* 50 Bankr. 610 (Bankr.N.D. IL1985).

In the *Lambert* case, the debtor, an owner and operator of a housing project, had entered into a similar Regulatory Agreement. On the event of a mortgage default, the Regulatory Agreement restricted the use of project funds to the payment of "reasonable operating expenses and necessary repairs." The *Lambert* court distinguished between "payments made for the investor's [debtor's] benefit and those made for the benefit of the project", finding that the attorneys' fees incurred in the defense of the foreclosure action were for the benefit of the debtor and therefore could not be classified as an operating expense. *Lambert* at 3.

The reasoning of the *Lambert* opinion is appropriate for this case. The Regulatory Agreement contains slightly different language than the *Lambert* agreement but both prohibit the use of Project Funds as set forth above and both Regulatory Agreements were made for the purpose of furthering the National Housing Act's objective of aiding people who live in inadequate housing. *See United States v. Winthrop Towers,* 628 F.2d 1028, 1036 (7th Cir.1983), *see also, EES Lambert Associates,* 43 Bankr. 689 (Bankr.N.D.IL1984).

The Regulatory Agreement allows the debtor to withdraw cash only when Note payments are current and all other "reasonable expenses incident to ... operation and maintenance" of the Project have been met. (Regulatory Agreement, Section 6, 13(g) and (h)). The retainer for the debtor's attorneys in this reorganization does not constitute a "reasonable expense incident to ... the operation or maintenance" of the Project. Rather, the attorneys' fees, among other things, serve to prolong the debtor's management of the Project and preserve the debtor's ability to reap the tax benefits provided by investment in such a project. The primary benefits resulting from such payment of such attorneys' fees accrue to the debtor rather than to the Project and the Project's tenants. Therefore, the attorneys' fees should be paid by the debtor's general partner.

The debtor asserts that once bankruptcy proceedings are commenced, covenants in the Regulatory Agreement are superceded by the statutory framework of the Bankruptcy Code. According to the debtor, the cash collateral provisions of Section 363 alone govern the use of proceeds, profits, and rents arising from property subject to a pre-petition security interest. The debtor further asserts that HUD is relegated to the status of a lien creditor and must recognize the debtor's right to request retainers under Section 328 of the Code. (Debtor's Memorandum in Support of Motion at 5–6.) HUD's lien extends to the rents which are cash collateral.

The Court does not take issue with the debtor's right to request a retainer. The question is who should pay the retainer?

■ The prohibition of the use of Project Funds for attorneys' fees in HUD foreclosure actions as set forth in the *Lambert* ruling is consistent with the Bankruptcy Code provisions regarding attorneys' fees. The Code provides a means of compensating legal counsel when the debtor's property is subject to liens leaving no equity for the debtor. Section 506(c) states "the Trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of *any benefit to the holder of such claim*". (11 U.S.C. § 506(c) (emphasis added).) Attorneys' fees may become a part of those "reasonable, necessary costs and expenses" but § 506(c) is clearly not for the purpose of providing compensation for debtor's counsel. The debtor in possession (trustee) has the burden of showing that fees paid from a creditor's collateral are for services which benefit the collateral rather than the debtor or other creditors. *In re Flagstaff Foodservice Corp.*, 739 F.2d 73, 75 (2nd Cir.1984), *Matter of Trim-X, Inc.*, 695 F.2d 296, 301 (7th Cir.1983), *Dozoryst v. First Financial Savings & Loan*, 21 Bankr. 392, 394 (N.D.Il.1982).

■ The debtor cannot show that this reorganization and defense against the foreclosure action have provided a benefit to HUD. In fact the contrary is true. The Note has been in default since 1971. Here, as in the *Lambert* case, "[i]t would be curious indeed if HUD were required to finance both sides of its foreclosure action". *EES Lambert* at 3. Absent HUD's consent, this Court will not allow the debtor to use Project Funds to pay the attorneys' retainer. "Saddling unconsenting secured creditors with professional fees ... would discourage those creditors from supporting debtors' reorganization efforts" and would conflict with the underlying policies of the Bankruptcy Code. *Flagstaff* at 77.

Were Project Funds allowed to be used to pay the debtor's attorneys' fees, HUD would be entitled to adequate protection in the form of a replacement lien of cash or its equivalent from an outside source. Security for Project Funds taken for fees cannot be replaced by a lien on any of the debtor's property as HUD has an existing lien on all of the debtor's property of value. (*See* 11 U.S.C. §§ 361, 362.) Further, there is no evidence that the general partner is inpecunious. Since the reorganization benefits the debtor rather than the Project, the general partner of the debtor should be required to pay the debtor's attorneys' fees. The general partner is liable for the debts of the debtor not paid by the debtor upon the liquidation of its assets unless such debts are forgiven or exculpated as is the debtor's obligation under the Note.

The Court finds and concludes that the proposed use of Project Funds to pay a retainer for the debtor's attorneys is specifically prohibited by HUD's Regulatory Agreement which binds the debtor, HUD and the Property, and that such use of Project Funds would be inconsistent with and in violation of the provisions of § 506(c) of the Bankruptcy Code.

The Court further finds and concludes that the debtor's general partner should pay the retainer fee for debtor's counsel if any is to be paid.

NOW THEREFORE IT IS ORDERED that the motion of the debtor, Michigan Beach Apartments, for Authority to Pay Retainer from Project Funds is hereby denied.

IT IS FURTHER ORDERED that the debtor's general partner is hereby authorized and empowered to pay to debtor's counsel a retainer of $15,000.