In re WESTERN REAL ESTATE FUND, INC., Oil Center Investments, First Western Income Realty Trust, Second Western Income Realty Trust, Western Institutional Properties Trust, Nantucket Joint Venture, Landsing Diversified Properties–II, LDP II Acquisition Corp., Oaks of Cypress Station, Ltd., Willowick Investors, Ltd., Watervleit–One Company, Ltd., and Watervleit–Two Company, Ltd., Debtors.

Bankruptcy No. BK–86–05387–B.

United States Bankruptcy Court, W.D. Oklahoma.

Feb. 19, 1988.

Jack L. Kinzie, Andrews Davis Legg Bixler Milsten & Murrah, Oklahoma City, Okl., for debtors.

V. Burns Hargis, Reynolds, Ridings & Hargis, Oklahoma City, Okl., Irving Sulmeyer, of Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, Cal., for Transamerica Occidental Life Ins. Co.

## MEMORANDUM DECISION AND ORDER

PAUL B. LINDSEY, Bankruptcy Judge.

On September 25, 1987, Transamerica Occidental Life Insurance Company ("Transamerica") filed herein its motion for payment of $559,195.51 as an administrative expense of the bankruptcy case of Oaks of Cypress Station, Ltd. ("Oaks"). On November 25, 1987, Transamerica filed herein its motion seeking an order of this court directing debtor to issue a Plan Note

in the principal amount of $5,184,455.96, in place of the debtor's proposed Plan Note in the amount of $3,485,000. The latter motion was grounded upon Transamerica's purported election, on November 4, 1987, under the provisions of 11 U.S.C. § 1111(b)(2), to have its entire claim treated as a secured claim.

Debtor filed objections to both motions and to the assertedly untimely § 1111(b)(2) election, the issues were thoroughly briefed by the parties and the court heard oral argument. At the conclusion of the oral argument, the court authorized, and the parties subsequently filed, post-hearing briefs.

### THE ADMINISTRATIVE EXPENSE ISSUE

■ Transamerica contends that the debtor's use of post-petition revenues from the Oaks of Cypress Apartments, authorized by the court pursuant to 11 U.S.C. § 363, constitutes, in effect, the contribution of those funds by Transamerica for the preservation of the estate, therefore entitling Transamerica to an administrative claim under 11 U.S.C. § 503(b)(1)(A). Debtor responds first that the post-petition revenues were property of the debtor estate, not of Transamerica, whether or not they constituted Transamerica's cash collateral. Thus, debtor contends that Transamerica, found by the court to have been adequately protected prior to confirmation of debtor's plan of reorganization, is not entitled to an administrative, or any other claim by reason of the debtor's use of post-petition revenues for the benefit and preservation of the property which generated such revenues. This court agrees.

First, Transamerica offers no authority whatever for the proposition, vital to its asserted administrative claim, that the post-petition rents and revenues derived from the Oaks are its property, and not property of the debtor estate, in which it may have an interest as collateral for obligations of the debtor to it. The only authorities submitted by Transamerica in support of its claim for an administrative expense are directed to the proposition that

surcharge of property securing its claim under 11 U.S.C. § 506(c) is not appropriate in this case. Debtor responds that it has never sought to invoke the provisions of § 506(c) and that it does not claim the need to do so.

Finally, although both parties presumably concede that the post-petition rents and revenues constitute "cash collateral," as that term is defined in 11 U.S.C. § 363(a), it is not altogether clear to this court that such is the case. The definition in § 363(a) makes specific reference, with respect to proceeds, products, offspring, rents or profits, to the provisions of 11 U.S.C. § 552(b). Under that provision, with certain stated exceptions, a pre-petition security agreement extending to such property acquired pre-petition, also extends to such property acquired post-petition "to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."

In *In re Casbeer*, 793 F.2d 1436 (5th Cir.1986), the court discusses the law of the State of Texas, where the Oaks Apartments are located, with regard to assignments of rents. It is first made clear that the question of whether the creditor's security interest in a property extends to the rents from that property is a question of state law, citing *Butner v. United States*, 440 U.S. 48, 55–57, 99 S.Ct. 914, 918–19, 59 L.Ed.2d 136 (1979); *Matter of Village Properties, Ltd.*, 723 F.2d 441, 443 (5th Cir.1984).

It is then stated that under Texas law, an assignment of rents in a pledge to secure a debt is not effective "until the mortgagee obtains possession of the property, or impounds the rents, or secures the appointment of a receiver, or takes similar action." *Taylor v. Brennan*, 621 S.W.2d 592, 594 (Tex.1981). In *Matter of Village Properties, Ltd., supra,* the court interpreted that language to mean that the form of the action taken to perfect "is not as important as its substantive thrust—diligent action by the mortgagee which demonstrates that he would probably have obtained the rents

had bankruptcy not intervened." Id., 723 F.2d at 446.

The court in *Casbeer* then examined the actions taken by the creditor both before and subsequent to bankruptcy; the contentions of the debtor that under 11 U.S.C. § 544 his status as a hypothetical perfect creditor effectively primes any security interest in rents which is unperfected at the time of bankruptcy; and the provisions of the deeds of trust themselves with regard to the assignment of rents. The court concluded that the creditor could, and did perfect its security interest after bankruptcy, which perfection related back to a time before bankruptcy for purposes of 11 U.S.C. § 546(b), but that it did not relate back for purposes of entitlement to the rents themselves.

In *Casbeer, supra,* the debtor did not seek or obtain court approval for the use of post-petition rents. In this case, debtor sought from the court, immediately after the filing of its petition, and subsequently obtained, after notice and opportunity for hearing, subject to appropriate segregation and accounting, the right to use cash collateral generated by the Oaks Apartments in the management, maintenance and upkeep of the property.

Even if the post-petition rents are in fact Transamerica's cash collateral, it is nevertheless the opinion of this court that its Order Authorizing Use of Cash Collateral and Providing Adequate Protection, and the subsequent clarification thereof, effectively "primed" Transamerica's interest to the extent of the authorization for the use of such funds. The court is expressly authorized by the last phrase in § 552(b), quoted above, to supersede the security interest of a creditor in post-petition rents.

> "Although this section [552(b)] grants a secured party a security interest in proceeds, product, offspring, rents, or profits, the section is explicitly subject to other sections of title 11. For example, the trustee or debtor in possession may use, sell, or lease proceeds, product, offspring, rents or profits under section 363." 124 Cong.Rec. H11097–98 (Daily

Ed. Sept. 28, 1978); S17414 (Daily Ed. Oct. 6, 1978).

Transamerica relies heavily upon *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), for its argument that its interest in its collateral is a vested property right, and that it may not be deprived of that right under the Fifth Amendment to the United States Constitution "without just compensation." Transamerica concedes that "subsequent cases may have refined the *Radford* court's thinking on permissible impairments...." *Post–Hearing Brief of Transamerica, filed January 22, 1988, at p. 5.* In this connection, Transamerica cites *Wright v. Union Central Life Insurance Co.,* 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940); *Wright v. Union Central Life Insurance Co.,* 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938); and *Wright v. Vinton Branch of the Mountain Trust Bank,* 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937).

Each of the cited cases was decided in connection with the Frazier–Lemke Act, originally adopted on June 28, 1934. 48 Stat. 1289. In *Radford,* the Supreme Court held the Act to be void as violative of the Fifth Amendment. The Congress promptly passed an amended Frazier–Lemke Act, 49 Stat. 942–45 and in *Wright v. Vinton Branch,* the Supreme Court found that, as amended, the Act made "no unreasonable modification of the mortgagee's rights," and that the same was thus valid. The two *Wright v. Union Central* cases, additionally limited the holding of *Radford.* With regard to *Radford* and *Vinton Branch,* the following statement is made in 2 *Collier on Bankruptcy,* § 362.01, at p. 362–14:

> "Due to the relatively modest differences between the two acts, it must be concluded that *Wright v. Vinton Branch* substantially limited *Radford* as a statement concerning the constitutional rights of secured creditors."

■ This court specifically rejects Transamerica's assertion, derived from dicta in *In re Sheehan,* 38 B.R. 859, 868 (Bankr.D. S.D.1984) and *In re Third Avenue Transit Corp.,* 198 F.2d 703, 706–07 (2nd Cir.1952),

that the court-authorized use of cash collateral over the objections of secured creditors constitutes an "involuntary loan," and creates the right to a § 503(b) administrative expense claim.

Transamerica having provided no convincing authority to the court for granting an administrative expense claim to it, and the court having found no such authority, Transamerica's motion for such relief will be denied.

### THE PLAN NOTE AND § 1111(b)(2) ISSUES

Transamerica's contention with regard to the amount of the plan note to which it is entitled is more complex. Transamerica's claim is in the aggregate amount of $5,184,455.96. Early in these proceedings, it was stipulated that the value of Transamerica's collateral, the Oaks of Cypress Apartments, was $3,485,000, and that such valuation was made "for all purposes," including but not limited to those of 11 U.S.C. § 506.

In May 1987, Transamerica filed a conditional election pursuant to 11 U.S.C. § 1111(b), in which it declined to have its claim treated as fully secured in the event the court determined that the debtor could not eliminate the unsecured portion of its claim through a proposed future sale. In a Memorandum Decision and Order dated June 30, 1987, (the "June 30 Order"), this court declined to confirm debtor's plan so long as the same contained the provisions referred to in Transamerica's election. This court required debtors to give such creditors additional time within which to elect under 11 U.S.C. § 1111(b)(2) to have their entire claim treated as secured; and in the absence of such election, to credit undersecured non-recourse creditors with an unsecured component to their respective claims and issue to them creditor debentures equal to the amount of such unsecured component.

Thus, in the absence of a subsequent, timely election by Transamerica to have its claim treated as a fully secured claim pursuant to 11 U.S.C. § 1111(b)(2), the earlier conditional election became an election *not* to be granted such treatment.

Transamerica complains that the court did not set a deadline for the filing of subsequent elections and that debtor took no action whatever to request, or to ascertain from affected creditors whether they intended to make such an election.

In the June 30 Order, this court directed debtors to amend or modify their plans within fifteen days, and such modifications and amendments were filed on July 15, 1987, *inter alia*, eliminating provision for future sales pursuant to 11 U.S.C. § 363(k). Thereafter, on September 1, 1987, the court entered its order confirming debtor's plan of reorganization, as amended and modified, such plan to have an effective date of September 30, 1987. Plan Notes in accordance with the provisions of the plan were distributed to the respective creditors entitled to the same on or immediately after the effective date. The Plan Note issued to Transamerica was in the principal amount of $3,485,000. On November 4, 1987, Transamerica belatedly filed, under § 1111(b)(2), its purported election to have its entire claim treated as secured.

It may be seen from the foregoing that Transamerica took no action for more than four months after the court's June 30 Order rendered Transamerica's May 1987 conditional election unconditional. It took no action during the more than three and one-half months following debtor's filing of the amendments and modifications to its plan in conformity with the court's June 30 Order. It took no action for more than two months following the court's entry of its order confirming debtor's plan, as amended and modified. It took no action until one month and four days after the effective date of the confirmed plans, well after it had received the Plan Note from debtor, which Plan Note was in the only principal amount which could have been expected by Transamerica, given its previous election not to have its claim afforded fully secured treatment under § 1111(b)(2).

Although in retrospect it would have been preferable for a "bar" date to have been fixed for the initial or amended filing

of § 1111(b)(2) elections following the court's June 30 Order, such did not occur, and the court must deal with the matter in the posture in which it is found.

The court does not credit Transamerica's stated justification of the November 4, 1987 filing of its new § 1111(b)(2) election; that such occurred only "when it became clear that the debtor would not be asking the court to set a time within which such an election would have to be filed." *Post-Hearing Brief of Transamerica, filed January 22, 1988, at p. 15.* That statement may be characterized, at best, as disingenuous. Simply stated, it is inconceivable that Transamerica, which has fought debtor at every turn since the filing of these cases, would have waited passively for debtor to take action which would govern Transamerica's future conduct. The stated position is particularly unbelieveable since the time period involved spanned the confirmation and effective dates of the plan so vigorously opposed by Transamerica and extended for more than one month following the effective date.

■ In the circumstances here presented, it is this court's opinion that Transamerica's November 4, 1987 filing of its election to have its claim treated as fully secured under § 1111(b)(2) was untimely and that the same should therefore be disallowed.

As a result, it is this court's opinion that the Plan Note issued to Transamerica, in the principal amount of $3,485,000.00 was issued in the correct amount, and that Transamerica is entitled to a Creditor Debenture as provided in debtor's plan, in an amount equal to the difference between the allowed amount of its total claim and the allowed amount of its secured claim. Similarly, Transamerica's secured claim, to the extent the same is allowed under 11 U.S.C. § 502, shall be allowed "as if the holder of such claim had recourse against the debtor on account of such claim" even though under the governing instruments the claim was non-recourse. 11 U.S.C. § 1111(b)(1)(A). The allowance of Transamerica's claim is being questioned in an adversary proceeding seeking the turnover of a certain tax and insurance escrow account held by Transamerica. The results of that litigation, however, will not affect the rulings contained in this order.

It is this court's opinion that Transamerica would not have been entitled to a Plan Note in the full amount of its claim even if its belated § 1111(b)(2) election had been allowed. Debtor's plan was confirmed, "crammed down," over Transamerica's objection, under 11 U.S.C. § 1129(b). Under § 1129(b)(2)(A)(i)(I) and (II), the condition that a plan be fair and equitable includes certain requirements with respect to a class of secured claims. The holder of such a claim must retain the liens securing the claims, to the extent of the allowed amount thereof, and must "receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property."

It is clear to this court that, had the Congress intended the result urged by Transamerica herein, the words "totaling at least the allowed amount of such claim" in the above quotation would have been not only unnecessary, but inappropriate.

The fallacy of Transamerica's interpretation is underscored by the following language from the Congressional Record at the time of the 1978 enactment of the Bankruptcy Code.

If section 1111(b)(2) applies then the "electing" class is entitled to have the entire allowed amount of debt related to such property secured by a lien even if the value of the collateral is less than the amount of the debt. In addition, the plan must provide for the holder to receive, on account of the allowed secured claims, payments, either present or deferred, of a principal face amount equal to the amount of the debt and of a present value equal to the value of the collateral.

For example, if a creditor loaned $15,-000,000 to a debtor secured by real property worth $18,000,000 and the value of the real property had dropped to $12,-000,000 by the date when the debtor com-

menced a proceeding under chapter 11, the plan could be confirmed notwithstanding the dissent of the creditor as long as the lien remains on the collateral to secure a $15,000,000 debt, the face amount of present or extended payments to be made to the creditor under the plan is at least $15 million, and the present value of the present or deferred payments is not less than $12,000,000.... 124 Cong.Rec. H1103–05 (Daily Ed. Sept. 28, 1978); S17420–22 (Daily Ed. Oct. 6, 1978).

A leading treatise makes the same point, more concisely, as follows:

> If a dissident secured class is dissatisfied with the appraisal, section 1111(b)(2) permits the class in most cases to waive its unsecured deficiency claim and to force the proponent of the plan to provide for the payment of the full amount of the claimant's allowed claim without regard to the section 506(a) valuation. Such deferred payments, however, need only have a present value equal to the value of the collateral as determined by the court under section 506(a). 5 *Collier on Bankruptcy* ¶ 1129.03, at pg. 1129–54 (15th Ed.1987).

Not only would the acceptance of Transamerica's interpretation clash with the language and intent of § 1129(b), the same would permit an undersecured creditor, by making the § 1111(b)(2) election, to entitle himself to post-petition interest on his entire claim. Such would be clearly contrary to the provisions of 11 U.S.C. § 506(b), which provides post-petition interest on their claims only to oversecured creditors. *See United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The provision by Congress for differing treatment of oversecured and undersecured creditors would be rendered virtually meaningless under the interpretation urged by Transamerica herein.

Based upon the foregoing, the motions of Transamerica, For Payment of Administrative Expense and To Determine Amount of Plan Note, and each of them, shall be denied.