**In re FEDERAL NATIONAL MORTGAGE ASSOCIATION, Appellant,**

v.

**DACON BOLINGBROOK ASSOCIATES LIMITED PARTNERSHIP, an Illinois Limited Partnership d/b/a Brentwood Apartments, Appellee.**

No. 92 C 1758.

United States District Court, N.D. Illinois, E.D.

April 2, 1993.

---

Paul Robert Hoffman, James S. Laing, Keck, Mahin & Cate, Chicago, IL, for appellant.

David K. Welch, Dannen, Crane, Heyman & Simon, Chicago, IL, for appellee.

### *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure, before the Court is appellant Federal National Mortgage Association's ("Fannie Mae's") appeal from the bankruptcy court's order docketed January 17, 1992 denying its Motions for Relief from Automatic Stay and to Prohibit Use of Cash Collateral, and the bankruptcy court's order docketed February 4, 1992, denying Fannie Mae's Motion to Alter or Amend Judgment. Fannie Mae filed these motions in the Chapter 11 reorganization proceeding commenced by Dacon Bolingbrook Associates Limited Partnership (the "Debtor"). The appeal is submitted pursuant to Rule 8001 of the Federal Rules of Bankruptcy Procedure.

#### *Jurisdiction*

This court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a) as an appeal from final orders entered in matters

arising under 11 U.S.C. § 101, *et seq.,* which have been referred by the District Court to the Bankruptcy Court pursuant to 28 U.S.C. § 157.

## Procedural History

This matter arises out of the bankruptcy case, *In re Dacon Bolingbrook Associates Limited Partnership,* No. 91 B 19163, which the Debtor filed on September 10, 1991. The court will summarize the procedural history relevant to this appeal.

On September 10, 1991, the Debtor filed its voluntary petition, commencing a case under Chapter 11 of the Bankruptcy Code. The Debtor has remained in possession of its Property and operated its business.

On November 13, 1991, Fannie Mae presented two motions to the bankruptcy court. First, Fannie Mae moved for relief from the automatic stay to enforce its Mortgage, Collateral Assignment of Leases, Rents and Profits, and Collateral Assignment of Beneficial Interest in Land Trust involving the apartment complex known as Brentwood Apartments, located at 300–316 and 322 Woodcreek Drive, Bolingbrook, Illinois (the "Property"). Second, Fannie Mae moved to prohibit the Debtor's use of cash collateral seeking to prohibit the Debtor from using all Rents collected by the Debtor from the Property (the "Rents") due to lack of adequate protection for Fannie Mae's interest in the Rents.

On January 9, 1992, after an expedited evidentiary hearing (the "Hearing"), the bankruptcy court issued an oral ruling denying Fannie Mae's Stay Motion and Cash Collateral Motion for the reasons stated in the record. The bankruptcy court's written order incorporating the oral ruling was docketed on January 17, 1992.

On January 27, 1992, Fannie Mae filed its Motion to Alter or Amend Judgment seeking reconsideration of the oral ruling and order. On January 29, 1992, the bankruptcy court denied Fannie Mae's Motion to Alter or Amend Judgment in open court.

This order was docketed on February 4, 1992.

On February 14, 1992, Fannie Mae timely filed its Notice of Appeal.

## Facts [1]

The Debtor is the owner and operator of an apartment complex (the "Property"), in Bolingbrook, Illinois comprised of 15 buildings with 789 apartment units that span over 22 acres. Transcript of proceedings on the Stay Motion and Cash Collateral Motion ("H. Tr."), at 35. Fannie Mae is the principal secured creditor of the Debtor pursuant to the assignment to Fannie Mae of the Note and various security documents from the debtor's original lender, Green Park Financial ("Green Park").

On or about April 10, 1989, Debtor and Boulevard Bank, N.A., as Trustee (the "Land Trustee") under a Trust Agreement dated March 1, 1989, known as Land Trust No. 8984 (the "Land Trust"), executed a Note in favor of Green Park in the principal amount of $18,500,000. To secure the obligations under the Note, the Debtor and the Land Trustee executed a Multi-family Mortgage, Assignment of Rents and Security Agreement and a Collateral Assignment of Leases, Rents and Profits which were recorded with the Will County Recorder of Deeds on April 12, 1989.

As further security for the Debtor's obligations under the Note, the Debtor executed a Collateral Assignment of Beneficial Interest dated April 10, 1989 (the "Collateral ABI"), conveying a security interest in favor of Green Park in all the Debtor's rights in the beneficial interest in the Land Trust together with all earnings, income, profits, benefits and advantages under the Land Trust. The Debtor and the Land Trustee also executed financing statements naming Green Park as the secured party, which were filed with the Illinois Secretary of State and the Will County Recorder on April 12, 1989.

On or about April 10, 1989, pursuant to Fannie Mae's Delegated Underwriting and Servicing Program, Green Park assigned

---

**1.** Unless otherwise stated, these undisputed facts are summarized from the facts set forth in the

Brief of Appellant Federal National Mortgage Association.

and endorsed the Note to Fannie Mae and assigned the Mortgage, the Assignment of Rents, the Collateral ABI and other collateral documents to Fannie Mae. Under this program, Green Park did the original underwriting of the Debtor's loan and was responsible for the daily servicing of the Debtor's loan, including collecting interest and escrow payments from the Debtor. In addition, Green Park and Fannie Mae entered into a Loss–Sharing Agreement which requires Green Park to make advances to Fannie Mae according to a certain formula in the event the Debtor defaults on payments required by the loan. H. Tr. at 24–25.

On September 10, 1991, Debtor commenced this case. On or about November 1, 1991, Fannie Mae filed with the bankruptcy court a Notice of Lien pursuant to 11 U.S.C. § 546(b), notifying the Debtor and all parties in interest of Fannie Mae's security interest in and lien upon all rental income generated by the Property (the "Rents").

The court will address the evidence presented at the hearings on Fannie Mae's motions for Relief from the Automatic Stay and to Prohibit Use of Cash Collateral and the bankruptcy court's findings as necessary in the discussion of the issues on appeal.

### Standard of Review

The parties dispute the applicable standard of review. The court will conduct *de novo* review of issues presenting pure questions of law or mixed questions of law and fact. With respect to pure questions of fact, the district court will not overturn the bankruptcy court unless a ruling is found to be clearly erroneous or an abuse of discretion. *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir.1985); *In re Schipper*, 112 B.R. 917, 918 (N.D.Ill.1990), *aff'd*, 933 F.2d 513 (7th Cir.1991).

### Issues on Appeal

Appellant Fannie Mae presents several issues on appeal. First, Fannie Mae argues that the bankruptcy court erred in denying Fannie Mae relief from the automatic stay for "cause" to permit Fannie Mae to pursue its state law remedies as a secured creditor against the debtor-in-possession under section 362(d)(1) of the Bankruptcy Code (the "Code"). Second, Fannie Mae contends that the bankruptcy court erred in denying Fannie Mae's Motion to Prohibit Use of Cash Collateral under sections 363(c)(2) and 363(e) of the Code. With respect to that motion, Fannie Mae claims that the bankruptcy court erred in ruling that Fannie Mae is not entitled to adequate protection of its interest in the Rents, revenues and profits generated by the Brentwood Apartments. Third, Fannie Mae argues that the bankruptcy court erred in denying Fannie Mae's request to limit or condition use by the debtor-in-possession of the cash collateral to expenditures for actual, necessary operating, maintenance, and repair expenses of the Brentwood Apartment complex. The court will address each of these issues in turn.

### DISCUSSION

### 1. *Motion for Relief from the Automatic Stay*

Fannie Mae appeals the bankruptcy court's denial of Fannie Mae's motion for relief from the automatic stay. A secured creditor is entitled to relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such a party in interest." 11 U.S.C. § 362(d)(1). The party requesting relief from the automatic stay has the burden of proof on the issue of the debtor's equity in the property. 11 U.S.C. § 362(g)(1). The movant can meet this burden by introducing evidence of debtor's continued failure to tender periodic payments on a secured debt. *In re Ocasio*, 97 B.R. 825, 826 (Bankr.E.D.Pa.1989). The party opposing relief from the automatic stay has the burden of proof on all other issues. 11 U.S.C. § 362(g)(2). Thus, the burden shifts to the debtor to prove that adequate protection exists for any significant diminution in the value of collateral. *In re Ocasio*, 97 B.R. at 826.

It is undisputed that the Debtor has defaulted on periodic payments due on the loan. Therefore, the burden of proof shifts to the Debtor to show adequate protection. Fannie Mae argues that the Debtor failed to meet its burden of proof on the issue of adequate protection because the Debtor offered only proposed budgets as evidence of adequate protection. Appellant Fannie Mae argues that the mere proposal of a budget for expenditures of cash collateral rent is inadequate to establish adequate protection, even if the rents are the debtor's sole source of income. *In re McCutchen,* 115 B.R. 126, 133 (Bankr.W.D.Tenn. 1990). In *McCutchen,* the court denied the debtor's motion to use cash collateral stating that a showing of "mere need" of the rents does not satisfy the requirements of sections 361 and 363. *Id.* In that case, the only proof of adequate protection offered by the debtor was the debtor's estimate of the value of the real estate and its budget. *Id.* However, the court did not state that mere proposal of a budget would never suffice but rather that the debtor's proof in that case did not support a finding of adequate protection. *Id.*

Furthermore, the Debtor must provide adequate protection only to the extent the value of Fannie Mae's collateral is declining. Appellant Fannie Mae claims that the Debtor has not met its burden of proving that the Property's value is not declining because the Property has, in fact, been declining in value. To support this argument, Fannie Mae points to the Debtor's recent financial history and the bankruptcy court's predictions for the Debtor's viability in the near future. For the year preceding the bankruptcy filing, the Debtor had insufficient cash flow to service its debt to Fannie Mae and finance the capital improvements needed to maintain the viability and marketability of the Property to desirable tenants. H. Tr. at 42. Furthermore, the Debtor admitted that occupancy dropped during that year from 95 percent to 85 percent as of the bankruptcy filing in September 1991. H. Tr. at 41–42. In addition, the bankruptcy court found that capital expenditures in the amount of more than $950,000 would be required to restore the Property to the value of an average apartment complex of the Property's age and type. H. Tr. at 654–55. The bankruptcy court also found that if the needed capital expenditures were not made in the near future, the value of the Property would decline. H. Tr. at 655–58. Fannie Mae argues that these facts revealed at the hearing show that the value of the Property is declining.

■ This court must defer to the factual findings of the bankruptcy court unless they are clearly erroneous. After considering the experts' appraisals, Judge Wedoff adopted as a starting point the income analysis set forth in the appraisal tendered by Fannie Mae's expert, Michael Kelly. H.Tr. at 652. Judge Wedoff preferred the income valuation method, which uses simple capitalization of stabilized income, rather than the discount approach, which discounts to present value the anticipated income over a several year period. He discredited the discount approach because it requires arbitrary judgments about the period over which the discounting should take place and as to "a loan amount which is deduced from the value that's ultimately obtained." H.Tr. at 652–53. The bankruptcy court agreed with Kelly that simple capitalization would reflect the value without unnecessary assumptions since the income for the Property is based on standardized leases so one need not discount future anticipated income in the way that might be necessary for property that has varying leases with varying terms. H.Tr. at 653. Thus, the bankruptcy court basically accepted the appraisal tendered by Fannie Mae's expert. Judge Wedoff adjusted Kelly's appraisal to reflect deductions for necessary capital improvements which he had not taken into account and a projection of 14 percent vacancy rather than the 15 percent figure Kelly utilized. H.Tr. at 653–54.

With these adjustments, the bankruptcy court concluded the Property was worth $18,150,000. H.Tr. at 655. The Debtor's unpaid principal balance of $18,422,487.48 at the time of the hearing, less a $350,000 letter of credit paid to Fannie Mae, leaves

$18,072,487.48 still owing on the debt to Fannie Mae. Thus, the bankruptcy court concluded that Fannie Mae is slightly oversecured. H.Tr. at 12,655. The bankruptcy court stated, however, that the small amount of oversecurity was "obviously not enough in itself to provide any adequate protection for any substantial decline in the value of the property." *Id.* Therefore, the bankruptcy judge noted that he would need to "determine the extent to which a decline in the value of the property has been established." H.Tr. at 655.

■ Although the bankruptcy court recognized that substantial expenditures for capital improvements are imminently necessary to prevent a decline in value, Judge Wedoff found that during the period between the filing of the bankruptcy petition and the approval of a plan for reorganization, the value of the collateral would not decrease significantly. The bankruptcy court correctly stated that the question of adequate protection revolves around the need to compensate a secured creditor for diminution in the value of its security during the pendency of the automatic stay. H.Tr. at 651. *See, e.g., United Savings Association v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 370, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988). His conclusion that the Property value will not decline is based on the fact that the Property is already in a state of disrepair and a few more months will not further diminish its value. Judge Wedoff stated that he looked at the question on a shorter term basis:

> It plainly at the time of filing was a complex badly in need of capital improvements. I think in three months it's going to be a complex badly in need of capital improvements, and the condition is likely to be pretty much the same.... I believe that the debtor has shown that its current maintenance program provides adequate protection to the value of the property as it exists now at least for a long enough period to allow the debtor to

demonstrate that it can present a confirmable plan.

H.Tr. at 656–58. Furthermore, the judge dismissed the motion for relief from the automatic stay without prejudice to a renewed motion based on a lack of adequate protection in the event of any substantial deterioration of the condition of the Property. H.Tr. at 661. Although the "short term" basis has been lengthened by this appeal, the court has been appraised of no substantial deterioration in the Property during its pendency.

■ The bankruptcy court essentially found that the Debtor showed that the value of the Property would remain at its current depressed state and would not decline further during the truncated period in which the Debtor must present its plan for reorganization. *See* H.Tr. at 656–58; Hearing Transcript dated January 29, 1992, at 6. Since this finding is not clearly erroneous, the court affirms the denial of Fannie Mae's motion for relief from the automatic stay.

### 2. *Motion to Prohibit Use of Rents as Cash Collateral*

■ Fannie Mae also appeals the bankruptcy court's denial of Fannie Mae's Motion to Prohibit Use of Cash Collateral. The Debtor may not use cash collateral unless "each entity that has an interest in such cash collateral consents; or the court, after notice and a hearing, authorizes such use ... in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Therefore, the court must consider section 363(e),[2] which requires that the Debtor cannot use cash collateral unless it provides adequate protection for the secured creditor's interest. Based on the plain language of the statute, the bankruptcy court's statement that "[a]dequate protection is not required for cash collateral" is erroneous. Hearing Transcript dated January 29, 1992, at 2. Thus, the Debtor must provide adequate protection if the Debtor intends

---

**2.** Section 363(e) states that "[n]otwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest."

to use the Rents in which Fannie Mae owns a perfected security interest since they constitute cash collateral. 11 U.S.C. § 363(a). *See In re Financial Center Associates of East Meadow,* 140 B.R. 829, 833 (Bankr. E.D.N.Y.1992) (rents which have been assigned to mortgagee by Chapter 11 debtor were "cash collateral" which debtor could not use unless it adequately protected mortgagee's interest in rents); *In re Cerrico Realty Corp.,* 127 B.R. 319, 322–23 (Bankr.E.D.N.Y.1991) (rents in which mortgagee held a security interest were cash collateral which Chapter 11 debtor needed permission to use).

The bankruptcy court apparently found that Fannie Mae's interest in the Rents had no value distinct from the value of the Property and therefore its finding that the Property was not declining in value substantially eliminated the need for the Debtor to provide adequate protection for Fannie Mae's interest in the Rents. Hearing Transcript dated January 29, 1992, at 2. Fannie Mae cites as illustrative one exchange between counsel for Fannie Mae and the bankruptcy court during a hearing on an interim fee petition filed by the Debtor which sought leave to spend Fannie Mae's cash collateral to pay its attorneys:

> MR. SMITH (counsel for Fannie Mae): .... the logical conclusion of what you're saying is that to have a lien on both the property and lien on rents is worth no more than having a lien solely on the property.
>
> THE COURT: In my judgment in bankruptcy that's true. It may give you plenty of other rights outside of bankruptcy, but in the context of the bankruptcy the only difference it makes as far as I see is whether the debtor has the obligation to come in on a motion for leave to use cash collateral or whether you would have the obligation on a motion to obtain adequate protection. Apart from that, I don't think it has a big impact on the case.

Transcript of Hearing on Fee Motion dated February 14, 1992, at 10. *See also* Motion to Supplement Record on Appeal, Ex. A, at 10.

■ The court finds this view to be erroneous. As a general proposition, "the federal bankruptcy courts should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have had under state law if no bankruptcy had ensued...." *Butner v. United States,* 440 U.S. 48, 56–57, 99 S.Ct. 914, 918–19, 59 L.Ed.2d 136 (1979). Therefore, since outside of bankruptcy the value of a secured creditor's interest in property plus the rents generated from that property is greater than a secured creditor's interest in the property alone, the same result should obtain in bankruptcy. Since the primary purpose of a security interest is to have the collateral available if the debtor becomes bankrupt, the real test of the validity and usefulness of a security interest is whether it will be upheld by the bankruptcy courts.

■ Of course, the creditor is not always entitled to precisely the same protection in bankruptcy as it would have under non-bankruptcy state law. For instance, an undersecured creditor is not entitled to compensation for the "use value" of its collateral during the automatic stay. *United Savings Association v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 382, 108 S.Ct. 626, 636, 98 L.Ed.2d 740 (1988). The Supreme Court in *Timbers* rejected petitioner's argument that the phrase "interest in property," for which an owner is entitled to adequate protection, includes the secured creditor's right (suspended by the automatic stay) to take immediate possession of the defaulted security to apply it in payment of the debt. *Id.* 484 U.S. at 370, 108 S.Ct. at 630. The bankruptcy court concluded that *Timbers* mandated the denial of Fannie Mae's motion. Judge Wedoff told counsel for Fannie Mae: "When you ask for rents, all you are asking for is the time value of your property during bankruptcy. *Timbers* says you're not entitled to that." Hearing Transcript dated February 14, 1992, at 12.

■ The bankruptcy court misconstrued *Timbers.* In that case, the Supreme Court reasoned that secured creditors with rights under section 552(b), which includes

a secured interest in rents, were entitled to compensation during the course of bankruptcy:

> Section 552(a) states the general rule that a prepetition security interest does not reach property acquired by the estate or debtor postpetition. Section 552(b) sets forth an exception, allowing postpetition "proceeds, product, offspring, rents, or profits" of the collateral to be covered only if the security agreement expressly provides for an interest in such property, and the interest has been perfected under "applicable nonbankruptcy law." (citations omitted). Section 552(b) therefore makes possession of a perfected security interest in postpetition rents or profits from collateral a condition of having them applied to satisfying the claim of the secured creditor ahead of the claims of unsecured creditors.

*Id.* at 374, 108 S.Ct. at 632. The Supreme Court stated that the undersecured creditor who lacks a perfected security interest in rents should not be permitted to achieve the same result as the secured creditor who has a perfected security interest in postpetition rents or profits by demanding the "use value" of his collateral. *Id.* Furthermore, in *Timbers* the respondent debtor "had agreed to pay petitioner the postpetition rents from the apartment project (covered by the after acquired property clause in the security agreement), minus operating expenses." *Id.* at 368–69, 108 S.Ct. at 628–29. Thus, the debtor in *Timbers* sought the "use value" of the property in addition to the post-petition rents.

Therefore, *Timbers* does not preclude the recognition of a security interest in postpetition rents which is entitled to adequate protection; rather the Court's reasoning in *Timbers* supports such recognition. The Debtor argues that "[n]o separate valuation can be made for the rents separate from the real estate. One encompasses the other for valuation purposes." Brief of Appellee, at 17. The court disagrees with this unsupported assertion. The purpose of acquiring a security interest in rents as collateral in addition to a security interest in the property that generates such rents is to provide additional collateral, beyond the

real estate itself, for repayment of the mortgage debt. *See, e.g.,* Joan Feeney and Patricia Gary, *Use of Rental Income in a Chapter 11 Case,* 35 Boston B.J. 4, 4 (July/August 1991), citing Note, *The Mortgagee's Rights to Rents After Default,* 50 Yale L.J. 1424, 1426–28 (1941). Thus, Fannie Mae possesses a distinct, additional interest in the Rents which must be adequately protected from a reduction in value under section 363(e). *See* Reply Brief of Appellant, at 15. *See also In re KNM Roswell Ltd. Partnership,* 126 B.R. 548, 556 (Bankr.N.D.Ill.1991) (debtor may only use cash collateral, consisting of perfected but inchoate security interest in rents, if it can give adequate protection to the party secured by that collateral); *In re EES Lambert Associates,* 62 B.R. 328, 343 (Bankr.N.D.Ill.1986) (debtor's request to use cash collateral threatens the secured creditor with "loss of the right to apply all project income to satisfy the mortgage obligation"); *In re Michigan Beach Apartments,* 61 B.R. 446, 448 (Bankr.N.D.Ill. 1986) (the bankruptcy court issued a cash collateral order allowing the debtor to continue to collect rents and use rental income solely for the maintenance of the Project with any excess to be applied to arrearages on the Note).

 Alternatively, the Debtor argues that since Fannie Mae did not take any steps to enforce its right to the Rents prior to the filing of Debtor's Chapter 11 case, Fannie Mae had no enforceable interest in the Rents requiring adequate protection. Brief of Appellee, at 18. In *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914 (1989), the Supreme Court held that the federal bankruptcy courts must look to state law to define the security interest of the mortgagee. *Id.* at 56–57, 99 S.Ct. at 918–19. Illinois law requires possession of the property or appointment of a receiver before a mortgagee could be entitled to rents. *See In re Gelwicks,* 81 B.R. 445, 447 (Bankr.N.D.Ill.1987). Section 546(b) of the Bankruptcy Code, however, states that if seizure or possession is required for perfection pursuant to the applicable state law, notice of the creditor's intent to seize

or gain possession is sufficient for perfection in bankruptcy. Therefore, a mortgagor may perfect a security interest in rents, post-petition, by giving proper notice. 11 U.S.C. § 546(b). Proper notice may be given by filing a motion for relief from the automatic stay. *Gelwicks*, 81 B.R. at 448. The *Gelwicks* court reasoned that "notice is sufficient if it informs the court or the possessor of the property that the creditor intends to enforce his lien in the rents." *Id.* Thus, Fannie Mae has a valid and perfected security interest in the Rents for which it is entitled to adequate protection.

Although the court has found that Fannie Mae properly perfected its security interest in the Rents by giving notice under section 546(b), the prepetition recordation of the security interest in the Property and the Rents should also suffice. Several courts have upheld rent assignments as perfected upon recordation and thus afford the mortgagee's interest in rents the protection of a perfected lien regardless of possession of the collateral. *E.g., In re Somero*, 122 B.R. 634, 638–39 (Bankr. D.Me.1991); *In re Raleigh/Spring Forest Apartment Associates*, 118 B.R. 42, 45 n. 2 (Bankr.E.D.N.C.1990); *In re Metro Square Associates*, 106 B.R. 584, 588 (D.Minn. 1989). The court finds these cases persuasive not only to give the mortgagee the right to rents in bankruptcy equivalent to the rights it would have had under state law if bankruptcy had not intervened, but also to create optimal incentives within the debtor/creditor relationship. For example, if possession or appointment of a receiver is required before bankruptcy in order to perfect a security interest in post-petition rents, the secured creditor will be encouraged to commence foreclosure proceedings immediately upon default. It would be preferable, in this court's opinion, to encourage the parties to attempt to cure the default before implementing such drastic measures. Therefore, the court cannot support a rule that induces a race between the debtor and the creditor upon default to file for voluntary Chapter 11 or commence foreclosure proceedings. At any rate, Fannie Mae is entitled to the Rents since it gave proper notice pursuant to section 546(b).

■ The Debtor argues in the alternative that if the court finds that Fannie Mae has a perfected security interest in the Rents distinct from its security interest in the underlying Property, the value of the Rents should be measured as of the date of the filing of Debtor's Chapter 11 case. Brief of Appellee, at 17. Therefore, the Debtor contends that if Fannie Mae did have a security interest in Rents as of the date of filing the Debtor's Chapter 11 case, its security interest, at best, would be limited to the cash in the bank and Rents owed to the Debtor as of the date of filing. Brief of Appellee, at 18. However, section 552(b) allows the secured creditor to collect postpetition rents if the security agreement expressly provides for an interest in such property and the interest has been perfected according to state law. *See, e.g., In re McCutchen*, 115 B.R. 126, 133 (Bankr. W.D.Tenn.1990). Thus, it would be inconsistent with section 552(b) to limit Fannie Mae to Rents that accrued prepetition. Fannie Mae is entitled to adequate protection for its perfected interest in the postpetition Rents.

■ Alternatively, the Debtor argues that Fannie Mae does not need adequate protection since it is receiving the loan installment payments from Green Park. The court finds unpersuasive the Debtor's assertion that Fannie Mae is experiencing no financial hardship in not receiving monthly payments from the Debtor. Appellee Brief, at 16. The Debtor argues that Fannie Mae's secured interests are adequately protected because Green Park will continue to make Fannie Mae whole each month as required by a Loss–Sharing Agreement. *Id.* Green Park is the originator of the loan to the Debtor, which was sold to Fannie Mae under a program which involved a loss sharing arrangement. H.Tr. at 637. Fannie Mae argues that although Green Park makes advances to Fannie Mae under the Loss–Sharing Agreement due to the Debtor's failure to make its loan payments, Fannie Mae must ultimately share the losses based on a "complicated formula." Ap-

pellant's Reply Brief, at 6. Therefore, Fannie Mae may eventually be required to return significant portions of the payments received to Green Park. *Id.* At the hearing, it was suggested that Green Park would be subrogated to the rights of Fannie Mae to the extent of cash advances made by Green Park. H.Tr. at 641–42. The subrogation issue need not be resolved since the court finds that the cash advances do not adequately compensate Fannie Mae because they do not constitute permanent payment of the debt.

■ Nonetheless, the required adequate protection of Rents is satisfied to the extent the Debtor reinvests the Rents in the operation and maintenance of the property because the value of the secured creditor's interest in its collateral will thereby be increased. *See In re Constable Plaza Associates*, 125 B.R. 98, 105 (Bankr. S.D.N.Y.1991) ("debtor's plowing back rents solely for the purpose of maintaining and operating its office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage"); *In re Prichard Plaza Associates Ltd. Partnership*, 84 B.R. 289, 302 (Bankr.D.Mass. 1988) (stating that adequate protection, if required, would be satisfied if the debtor applied rents entirely to the operation and maintenance of the property); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 267 (Bankr.C.D.Cal.1988) (holding that rents could be spent to make repairs or renovations that would increase rent flow even without equity cushion); *In re Western Real Estate Fund, Inc.*, 83 B.R. 52, 54 (Bankr.W.D.Okla.1988) (allowing expenditures of postpetition rent revenues for upkeep). Nonetheless, absent alternative adequate protection, the use of Rents must be strictly limited to preserving other collateral securing Fannie Mae's claim, namely the Property which generates the Rents. Since the Debtor's proposed use of the Rents is for operating and maintenance expenditures and in light of other relief to be granted, the court affirms the bankruptcy court's denial of Fannie Mae's motion to prohibit use of cash collateral.

### 3. *Motion to Limit or Condition Use of Cash Collateral*

■ Appellant Fannie Mae argues that the bankruptcy court erred in denying Fannie Mae's request to limit or condition use by the Debtor of cash collateral consisting of rents, revenues, and profits from the Brentwood Apartments to expenditures for actual, necessary operating, maintenance, and repair expenses of the Brentwood Apartment complex. The court agrees. Since the Debtor cannot provide adequate protection for the Rents except to the extent the Rents are reinvested in the Property for maintenance and repair, the Rents may not be spent on anything else. *See, e.g., In re Constable Plaza Associates*, 125 B.R. at 105. Section 363(c)(4) of the Code provides that with respect to cash collateral beyond what the court authorizes the Debtor to use, "the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control." 11 U.S.C. § 363(c)(4).

Furthermore, the court finds that Fannie Mae has cause for suspicion in light of the misappropriation of funds by the Debtor's general partner. Appellee argues that limiting the use of cash collateral is unnecessary and unwarranted since Judge Wedoff found it unlikely that any improprieties would occur while Debtor is "under the microscope provided by Chapter 11" and since the Debtor submitted detailed budgets for 1992 and 1993 which itemized each anticipated expenditure. Brief of Appellee, at 18. However, the bankruptcy court also found that the use of the Debtor's employees to provide personal services to the owner of the Debtor was "not insignificant" and not "merely a bookkeeping mistake." H.Tr. at 659. Judge Wedoff stated that although that matter was "of substantial concern," he could not "find that the improprieties which were evidenced here present a present danger of misappropriation of funds so as to result in a lack of adequate protection." H.Tr. at 660. However, the bankruptcy court based its finding on the erroneous assumption that Fannie Mae was not entitled to adequate protection for its security interest in the Rents. Based on

this court's finding to the contrary and this court's agreement with the bankruptcy court regarding the seriousness of the misappropriation by the Debtor's general partner, Fannie Mae's Motion to Limit or Condition Use of Cash Collateral is granted, and the bankruptcy court's denial of that motion is reversed. *See, e.g., In re Franklin Pembroke Venture II,* 105 B.R. 276, 281 (Bankr.E.D.Pa.1989).

Accordingly, the court imposes the following conditions and limitations on the Debtor's use of Rents as Cash Collateral: a) detailed weekly reports of actual expenditures and income during the previous week; b) detailed monthly budget projections; c) advance notice and mandatory court authorization prior to making expenditures which exceed the budgeted amount or to making off-budget expenditures; d) advance notice and mandatory court authorization prior to making any non-emergency repairs outside routine maintenance or any capital expenditures exceeding $10,000; e) the creation of an escrow account into which the Debtor shall be required to deposit all Rents in excess of the Debtor's authorized expenditures; and f) the granting of a lien to Fannie Mae on the escrow account containing excess rents.

### Conclusion

The bankruptcy court's denial of Fannie Mae's motions for relief from the automatic stay and protection of its cash collateral is affirmed. This court finds that rents have a value in bankruptcy for which a secured creditor is entitled to adequate protection in addition to the value attributable to the property which generates such rents. To that extent, the court disagrees with the findings of the bankruptcy court. Nonetheless, the bankruptcy court found that the Property would maintain its value for the short period of time in which the Debtor must present a plan of reorganization. Thus, since Fannie Mae is slightly oversecured and the value of its collateral is not declining, the Debtor need not provide adequate protection for the Property. Furthermore, so long as Rents are used to preserve collateral, including maintenance and operating expenses of the subject Property, the Rents will also be adequately protected. Since the court cannot find the factual findings of the bankruptcy judge clearly erroneous and for the foregoing reasons, the bankruptcy court's order denying Fannie Mae's motions for relief from the automatic stay and for protection of its cash collateral is affirmed. However, the court reverses the bankruptcy court's denial of the Reconsideration Motion insofar as the court limits the Debtor's use of cash collateral to necessary operating expenses and capital improvements of the Property.